IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.                                                                                  24-CR-117

RAEKWON GORDON,

          Defendant.

---

## PLEA AGREEMENT

The defendant, RAEKWON GORDON, and the United States Attorney for the Western District of New York (hereinafter "the government") hereby enter into a plea agreement with the terms and conditions as set out below.

### I.  THE PLEA AND POSSIBLE SENTENCE

1. The defendant agrees to plead guilty to Count 1 and Count 3 of the Indictment, which charges as follows:

    a.  In Count 1, a violation of Title 21, United States Code, Section 841(a)(1) (possession of fentanyl with intent to distribute), for which the maximum possible sentence is a term of imprisonment of 20 years, a fine of $1,000,000, a mandatory $100 special assessment, and a term of supervised release of at least 3 years and up to life; and,

    b.  In Count 3, a violation of Title 18, United States Code, Section 922(g)(1) (felon in possession of firearms and ammunition), for which the maximum possible sentence is a term of imprisonment of 15 years, a fine of $250,000, a mandatory $100 special assessment, and a term of supervised release of 3 years.

    c.  The defendant understands that the penalties set forth in this paragraph are the minimum and maximum penalties that can be imposed by the Court at sentencing.

2. The defendant understands that the Court may enter an order of community restitution in an amount not to exceed any fine imposed pursuant to Title 18, United States Code, Section 3663(c), and Sentencing Guidelines § 5E1.1(d).

3. The defendant understands that, if it is determined that the defendant has violated any of the terms or conditions of supervised release, the defendant may be required to serve in prison all or part of the term of supervised release, up to 5 years, without credit for time previously served on supervised release. As a consequence, a prison term imposed for a violation of supervised release may result in the defendant serving a sentence of imprisonment longer than the statutory maximum set forth in ¶ 1 of this agreement.

## II.  ELEMENTS AND FACTUAL BASIS

4. The defendant understands the nature of the offenses set forth in ¶ 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crimes:

### Count 1 – 21 U.S.C. § 841(a)(1)

a. that the defendant possessed a controlled substance;

b. that the defendant knew that he possessed a controlled substance; and,

c. that the defendant intended to distribute the controlled substance.

### Count 3 – 18 U.S.C. § 922(g)(1)

a. that the defendant was convicted in any court of a crime punishable by imprisonment for a term exceeding one year, as charged in Count 3 of the Indictment;

2

b. that the defendant knew that he had previously been convicted in any court of a crime punishable by imprisonment for a term exceeding one year;

c. that the defendant knowingly possessed a firearm and/or ammunition, as charged in the Indictment; and

d. that the possession of the firearm and/or ammunition was in or affecting interstate or foreign commerce.

## FACTUAL BASIS

5. The defendant and the government agree to the following facts, which form the basis for the entry of the pleas of guilty including relevant conduct:

a. On or about April 5, 2024, in the Western District of New York, the defendant, RAEKWON GORDON, did knowingly, intentionally, and unlawfully possess, with intent to distribute, fentanyl, a Schedule II controlled substance. Also, on that same date, in the Western District of New York, the defendant, knowing that he had previously been convicted of a crime punishable by a term of imprisonment exceeding one year, knowingly possessed, in and affecting commerce, one firearm and 27 rounds of ammunition.

b. On April 5, 2024, while on routine patrol, Buffalo Police Department (BPD) officers observed a white 2018 Dodge Durango travelling at a high rate of speed and attempted to conduct a traffic stop of the vehicle by activating their overhead lights. The vehicle did not comply and fled from the area. Throughout the pursuit, BPD officers observed the vehicle being driven in a reckless manner, passing vehicles, ignoring traffic lights, and driving at a high rate of speed (over 50-mph in a 30-mph zone). Officers followed the vehicle until it parked in the driveway of 53 Roslyn Street in Buffalo, NY. Officers observed three males all exit the vehicle from the driver's side door. At that point, the three males were detained. The defendant was eventually identified as being in the front passenger seat of the vehicle.

c. Upon search of the area shortly after detaining the three individuals, BPD officers discovered one firearm in the front yard of the house immediately adjacent to the house where the vehicle had parked. Officers also recovered a second firearm, a loaded Glock, model 17,

    with a fully automatic switch[1] and extended magazine (27 rounds of ammunition) attached, located on the sidewalk several houses down from where the vehicle had parked. The Glock 17 had a defaced serial number on the frame of the gun, with only a partial "G" and "157" visible; however, serial number GKS157 was visible on the slide and barrel of the firearm. The defendant's DNA was determined to be present on this firearm.

d.     During a search of the Dodge Durango, officers recovered 336 blue pills bearing markings "M" in the rectangle on one side, and "30" on the opposite side, in a plastic bag, located in the center console of the vehicle. Pharmaceutical information indicated that these pills should contain oxycodone, a controlled substance, however, the Erie County Central Police Services (CPS) laboratory testing discovered the pills to contain fentanyl. The total weight of the fentanyl pills was 36.32 grams. The defendant's DNA was determined to be present on the plastic baggie containing the fentanyl pills.

e.     The defendant admits to possessing the above-described controlled substance with the intent to distribute it to others, and to possessing a firearm and ammunition.

f.     The Glock, model 17, firearm with serial GKS157, and the 27 rounds of ammunition were manufactured outside the State of New York. Therefore, the firearms and the ammunition had previously traveled in and affected interstate commerce.

g.     The defendant admits that he has been convicted in Erie County Court, New York, of a crime punishable by a term of imprisonment exceeding one year. Specifically, on or about January 28, 2019, the defendant was convicted of Attempted Criminal Possession of a Weapon in the Second Degree, a Class D felony. The defendant knew of those convictions on or about April 5, 2024, when he possessed the firearm and ammunition listed in ¶5(c) of this Plea Agreement.

---

[1] A Glock "switch" is also known as a Glock gun conversion device (meaning any part or combination of parts utilized to cause a firearm to fire more than one round with a single pull of the trigger).

### III. SENTENCING GUIDELINES

6.  The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines (Sentencing Reform Act of 1984).

### BASE OFFENSE LEVEL

7.  The government and the defendant agree that Guidelines §§ 2K2.1(a)(4) applies to the offense of conviction and provides for a base offense level of **20**.

### SPECIFIC OFFENSE CHARACTERISTICS
### U.S.S.G. CHAPTER 2 ADJUSTMENTS

8.  The parties agree that the following specific offense characteristics apply:

a.  the four (4) level increase pursuant to Guidelines § 2K2.1(b)(4)(B)(i) (firearm had an altered serial number); and

b.  the four (4) level increase pursuant to Guidelines § 2K2.1(b)(6)(B) (used/possessed firearm in connection with another felony offense).

### ADJUSTED OFFENSE LEVEL

9.  Based on paragraphs 7 and 8 of this agreement, and Guidelines §§ 3D1.2(c) and 3D1.3(a), it is the understanding of the government and the defendant that the defendant's combined adjusted offense level is **28**.

### ACCEPTANCE OF RESPONSIBILITY

10.  At sentencing, the government agrees not to oppose the recommendation that the Court apply the two (2) level downward adjustment of Guidelines § 3E1.1(a) (acceptance of responsibility), and further agrees to move the Court to apply the additional one (1) level decrease of Guidelines § 3E1.1(b), which would result in a total offense level of **25**.

## CRIMINAL HISTORY CATEGORY

11.  It is the understanding of the government and the defendant that the defendant's criminal history category is III. The defendant understands that if the defendant is sentenced for, or convicted of, any other charges prior to sentencing in this action the defendant's criminal history category may increase. The defendant understands that the defendant has no right to withdraw the pleas of guilty based on the Court's determination of the defendant's criminal history category.

## GUIDELINES' APPLICATION, CALCULATIONS, AND IMPACT

12.  It is the understanding of the government and the defendant that, with a total offense level of **25** and criminal history category of **III**, the defendant's sentencing range would be a term of imprisonment of **70 to 87** months, a fine of **$20,000** to **$1,000,000**, and a period of supervised release of **3 years**. Notwithstanding this, the defendant understands that at sentencing the defendant is subject to the minimum and maximum penalties set forth in ¶ 1 of this agreement for both counts of conviction.

13.  The government and the defendant agree to the correctness of the calculation of the Sentencing Guidelines range set forth above. The government and the defendant, however, reserve the right to recommend a sentence outside the Sentencing Guidelines range. This paragraph reserves the right to the government and the defendant to bring to the attention of the Court all information deemed relevant to a determination of the proper sentence in this action.

14. The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations recommended by either party and the defendant will not be entitled to withdraw the pleas of guilty based on the sentence imposed by the Court.

15. In the event that the Court contemplates any Guidelines adjustments, departures, or calculations different from those agreed to by the parties above, the parties reserve the right to answer any inquiries by the Court concerning the same.

### IV.  STATUTE OF LIMITATIONS

16. In the event the defendant's pleas of guilty are withdrawn, or convictions vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government and further agrees not to assert the statute of limitations as a defense to any federal criminal offense which is not time barred as of the date of this agreement. This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty pleas or vacating of the convictions becomes final.

### V.  REMOVAL

17. The defendant represents that the defendant is a citizen of the United States. However, if the defendant is a naturalized citizen of the United States, the defendant understands that pleading guilty may result in denaturalization and removal. If the defendant is not a citizen of the United States, the defendant understands that, if convicted, the

defendant may be removed from the United States, denied citizenship, and denied admission to the United States in the future. The defendant understands that any effect that the defendant's conviction in this action will have upon the defendant's immigration status, that is, possible removal, denaturalization, or other immigration consequence, is the subject of a separate proceeding. The defendant has had an opportunity to fully determine what the consequences of the defendant's conviction may be on the defendant's immigration status, and the defendant understands that no one, including the defendant's attorney or the district court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that the guilty plea may entail.

18. The defendant understands that the defendant is bound by the guilty plea regardless of the immigration consequences of the plea. Accordingly, the defendant waives any and all challenges to the guilty plea and to the sentence based on those consequences, and agrees not to seek to withdraw the guilty plea or to file a direct appeal or any kind of collateral attack challenging the guilty plea, conviction, or sentence based on the immigration consequences of the guilty plea, conviction, or sentence. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in the appropriate forum.

### VI. GOVERNMENT RIGHTS AND OBLIGATIONS

19. The defendant understands that the government has reserved the right to:

a. provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning the defendant's background, character and involvement in

    the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

b. respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

c. advocate for a specific sentence consistent with the terms of this agreement including the amount of a fine and the method of payment;

d. modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information, including conduct and statements by the defendant subsequent to this agreement, regarding the recommendation or factor;

e. oppose any application for a downward departure and/or sentence outside the Guidelines range made by the defendant.

20. At sentencing, the government will move to dismiss Counts 2 and 4 of the Indictment pending against the defendant under 24-CR-117.

21. The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

### VII. APPEAL RIGHTS

22. The defendant knowingly waives the right to appeal and collaterally attack the defendant's convictions in any proceeding, including, but not limited to, an application under Title 28, United States Code, Section 2255, and/or Section 2241. In addition to any other claims the defendant might raise, the defendant knowingly waives the right to challenge the

convictions based on: (1) any non-jurisdictional defects in the proceedings prior to entry of this plea; (2) a claim that the statutes to which the defendant is pleading guilty are unconstitutional, (except in the event that, in the future, the Supreme Court finds the statute in question unconstitutional); and (3) a claim that the conduct admitted in the Factual Basis of this plea agreement does not fall within the scope of the statutes to which the defendant is pleading guilty.

23.    The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack, in any proceeding, including but not limited to, an application under Title 28, United States Code, Section 2255 and/or Section 2241, any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment of **70** to **87 months**, a fine of **$20,000** to **$1,000,000**, and a period of supervised release of **3 years,** notwithstanding the manner in which the Court determines the sentence. The defendant further knowingly waives the right to appeal and/or collaterally attack any condition of supervised release imposed by the Court for which the defendant had notice, including from a recommendation by the Probation Office in the Presentence Investigation Report, and did not object. In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence.

24.    The defendant understands that by agreeing not to collaterally attack the convictions or sentence in any proceeding, including, but not limited to, an application under

Title 28, United States Code, Section 2255 and/or Section 2241, the defendant is waiving the right to challenge the convictions or sentence in the event that, in the future, the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

25. The government waives its right to appeal any component of a sentence imposed by the Court which falls within or is greater than the sentencing range for imprisonment of **70** to **87 months**, a fine of **$20,000** to **$1,000,000**, and a period of supervised release of **3 years**, notwithstanding the manner in which the Court determines the sentence. However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

26. By entering this plea of guilty, the defendant waives any and all right to withdraw the defendant's plea or to attack the defendant's conviction or sentence, either on direct appeal or collaterally, on the ground that the government has failed to produce any discovery material, (other than material the government was required to produce under *Brady v. Maryland* and its progeny), that has not already been produced as of the date of the signing of this Agreement.

27. Notwithstanding the foregoing, nothing in the Appeal Rights section of this plea agreement shall be construed to be a waiver of whatever rights the defendant may have to assert claims of ineffective assistance of counsel, whether on direct appeal, collateral review, or otherwise.

## VIII. FORFEITURE PROVISION

28. As a condition of the plea, the defendant agrees not to contest any administrative or judicial (civil or criminal) forfeiture proceeding that may be brought by the government, and agrees to the forfeiture of the defendant's right, title and interest to any and all property which is subject to forfeiture pursuant to Title 21, United States Code, Sections 853(a), 853(p) and 881(a). That property includes the following seized in Buffalo, New York on or about April 5, 2024 (the "Seized Currency"):

**CURRENCY:**

Approximately $5,526.00 in United States currency.

29. The defendant agrees that the conditions of Title 21, United States Code, Section 853(p) have been satisfied, and thus the government has the right to seek forfeiture of the Seized Currency as substitute assets of the defendant pursuant to Title 21, United States Code, Section 853(p) and Federal Rule of Criminal Procedure 32.2(e)(1)(B). The defendant agrees to waive notice and consents to the entry of any such order of forfeiture for substitute assets.

30. The defendant acknowledges that the defendant is the owner and/or exercised dominion and control of the firearms, ammunition and magazines described below and agrees to immediately criminally forfeit all of the defendant's right, title and interest to any and all property which is subject to forfeiture pursuant to Title 18, United States Code, Sections 924(d) and 3665, and Title 28, United States Code, Section 2461(c), which is in the possession and control of the defendant or the defendant's nominees. That property includes the

following seized on or about April 5, 2024 from Buffalo, New York (the "Seized Firearms and Ammunition"):

**FIREARMS AND AMMUNITION:**

a. One (1) Glock 48 bearing serial number BRTX206, with approximately 11 rounds of 9mm ammunition contained therein; and

b. One (1) Glock 17 bearing a defaced serial number, believed to be GKS157, with a fully automatic control switch, with approximately 27 rounds of 9mm ammunition contained therein.

31. The defendant agrees that the Seized Currency and the Seized Firearms and Ammunition (collectively hereinafter, the "Seized Assets") are subject to forfeiture and waives any and all constitutional, statutory, legal and equitable rights, including but not limited to time restrictions and notice provisions with respect to the final disposition or forfeiture of the Seized Assets. The defendant further agrees to the destruction of the Seized Firearms and Ammunition.

32. After the acceptance of the defendant's guilty plea, and pursuant to Rule 32.2(b)(2) of the Federal Rules of Criminal Procedure, the Court may issue a Preliminary Order of Forfeiture for the Seized Assets. The defendant hereby waives any right to notice of such Preliminary Order of Forfeiture. The defendant further consents and agrees that the Preliminary Order of Forfeiture and a Final Order of Forfeiture shall issue and become final as to the defendant prior to sentencing and agrees that it shall be made part of the defendant's sentence and included in the judgment pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure. The defendant further agrees to waive any time restrictions or requirements as provided in Title 18, United States Code, Section 983, any notice provisions in Rules 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument,

announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant knowingly and voluntarily waives his right to any required notice concerning the forfeiture of any of the property forfeited hereunder, including notice set forth in an indictment, information or administrative notice. The defendant understands that the criminal judicial forfeiture of any of the Seized Assets will be part of the sentence that may be imposed in this case and waives any failure by the Court to advise the defendant of this, pursuant to Rule 11(b)(1)(J), at the time the guilty plea is accepted. The defendant further agrees that the forfeiture of the Seized Assets as authorized herein shall not be deemed an alteration of the defendant's sentence. Forfeiture of the Seized Assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, any income taxes or any other penalty that the Court may impose upon the defendant in addition to forfeiture and shall survive bankruptcy.

33.   The defendant acknowledges that the Federal Bureau of Investigation ("FBI") seized/collected/acquired the Seized Currency and is required to send written notice in non-judicial civil forfeiture matters pursuant to Title 18, United States Code, Section 983. The defendant hereby knowingly and voluntarily waives his rights to such notice being sent within the time frames set forth in Title 18, United States Code, Section 983 and to having the property returned to him if notice is not sent within the prescribed time frames. The defendant agrees not to contest the administrative forfeiture of the Seized Currency and agrees to waive his right, title and interest to the Seized Currency.

34.   The defendant agrees to unconditionally release and hold harmless the government and FBI, its officers, employees, and agents, from any and all claims, demands, damages, causes of action or suits, of whatever kind and description, wheresoever situated,

14

that might now exist or hereafter exist by reason of or growing out of or affecting, directly or indirectly, the seizure, detention, forfeiture, or disposition of the Seized Currency.

35. The defendant agrees not to file a claim or petition seeking remission contesting the forfeiture of the Seized Assets in any administrative or judicial (civil or criminal) proceeding. The defendant further agrees not to assist any person or entity in the filing of any claim or petition seeking remission or contesting the forfeiture of the Seized Assets in any administrative or judicial (civil or criminal) forfeiture proceeding. Further, if any third party files a claim or petition to the Seized Assets, the defendant will assist the government in litigating such claim.

36. The defendant knowingly, intelligently, and voluntarily waives his right to a jury trial on the forfeiture of the Seized Assets. The defendant knowingly, intelligently, and voluntarily waives all constitutional, legal and equitable defenses to the forfeiture of the Seized Assets in any proceeding, whether constitutional or statutory, including but not limited to, any claim of innocent ownership, any defenses based on principles of double jeopardy, as to this criminal proceeding or any related civil or administrative proceeding, the <u>Ex Post Facto</u> clause of the Constitution, any applicable statute of limitations, venue, or any defense under the Eighth Amendment, including a claim of excessive fines.

37. The defendant agrees that in the event this plea agreement is voided for any reason, the agreement for forfeiture and disposition of the Seized Assets survive and shall be given full force and effect. The failure of the defendant to forfeit any property as required under this agreement, including the failure of the defendant to execute any document to accomplish the same on timely notice to do so, may constitute a breach of this agreement.

38. The defendant agrees that if, for any reason, in any pleadings before the Court or any order of the Court, including but not limited to the Preliminary and/or Final Order of Forfeiture and the Judgment and Commitment, the government fails to properly identify an item to be forfeited, fails to include any item that is forfeitable under the applicable forfeiture statute in this case or includes a clerical or technical error, the defendant will consent and not oppose any effort by the government to amend, correct or add to the description/list of items subject to forfeiture in this case. Additionally, to the extent necessary and at the discretion of the United States Attorney's Office, the defendant further agrees in the alternative, to the abandonment or civil forfeiture of any items that were excluded from the original description of items to be forfeited. Finally, if not specially identified or listed above, the defendant agrees to the abandonment of any and all cellular phones, computers and electronic equipment seized by law enforcement in this case.

## X. TOTAL AGREEMENT AND AFFIRMATIONS

39. This plea agreement represents the total agreement between the defendant, **RAEKWON GORDON**, and the government. There are no promises made by anyone other than those contained in this agreement. This agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant.

MICHAEL DIGIACOMO
United States Attorney
Western District of New York

BY: _____
STACEY N. JACOVETTI
Assistant United States Attorney
Dated: ~~March~~ April 10, 2025

16

I have read this agreement, which consists of pages 1 through 17. I have had a full opportunity to discuss this agreement with my attorney, ~~John Morrissey~~ Brian Comerford & Ayan, Esq. I agree that it represents the total agreement reached between me and the government. No promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my pleas of guilty. I fully agree with the contents of this agreement. I am signing this agreement voluntarily and of my own free will.

_____
RAEKWON GORDON
Defendant
Dated: ~~March~~ APRIL 10, 2024

_Brian P. Comerford_
_____
~~JOHN MORRISSEY, ESQ.~~
Attorney for the Defendant
Dated: ~~March~~ APRIL 10, 2024

17